69  365
141 584

## JOHN B. HOAG

*v.*

## JAMES C. STARR *et al.*

DECREE—*agreement held to operate as a satisfaction of.* Where the land of A had been sold under a decree of foreclosure of a mortgage, given by him to secure the payment of the debt of another, but which contained no covenant to pay the same, and a personal decree taken against the mortgagor for the debt that remained after the sale, which was sought to be enforced, and the mortgagor and mortgagee then entered into an agreement to settle all matters in controversy, whereby the mortgagor turned out certain claims, which, when paid, were to apply in payment, and gave his notes, secured by deed of trust on lands, including the same that was sold on foreclosure, for the balance claimed by the mortgagee: *Held,* that by the new arrangement the decree in the foreclosure was satisfied, and a subsequent sale of lands of the mortgagor, under the same, should be set aside as void, upon payment to the creditor of moneys expended by him to procure the title to any part of the lands described in the trust deed.

APPEAL from the Circuit Court of Mercer county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. PEPPER & WILSON, and Mr. H. BIGELOW, for the appellant.

Messrs. BASSETT & CONNELL, for the appellees.

Mr. Chief Justice Breese delivered the opinion of the Court:

This is an appeal in chancery, from the circuit court of Mercer county, in a suit there pending, wherein John B. Hoag was complainant, and James C. Starr and James H. Connell were respondents, and which, on the hearing, was dismissed, and a decree rendered against the complainant for costs. To reverse this decree, complainant appeals.

The leading facts in the case are, that one Spencer Tompkins, the brother-in-law of complainant, applied to Starr for a loan of twelve hundred dollars. Starr agreed to loan him the money, provided complainant, Hoag, would mortgage as security certain lands claimed by him in Mercer county. Tompkins executed the notes for the money and Hoag executed the mortgage.

The notes having matured and remaining unpaid, Starr, at the June term, 1869, filed his bill in the Mercer circuit court to foreclose this mortgage. Hoag entered his appearance, waiving process, and ruled to answer, but made a default.

At the February term, 1870, the cause was referred to the master in chancery, who reported there was due from Hoag to Starr, on the mortgage, fifteen hundred and thirty-eight dollars and thirty-one cents, for which a decree passed, with the further decree, if the mortgaged premises should not sell for sufficient to satisfy the amount of the decree and the costs of the proceeding, that then the complainant should have execution against the defendant's goods and chattels as in a judgment at law, with the costs therein.

Starr sold the lands under the decree, and bid them in for three hundred dollars, and to make the amount of the decree he filed, to the next October term, a creditor's bill. Matters remained in this position until the fourth of March, 1871, on which day this agreement was entered into between the parties :

"This is to witness that J. C. Starr, and John B. Hoag, have this day settled, or agreed to settle, all matters in controversy between them, as follows, to-wit : Said Hoag to pay said Starr the sum of nineteen hundred and three and thirty-three one-hundredths ($1903.33) dollars, with interest at ten per cent per annum from this day, as follows, to-wit: Five hundred and seventy-five dollars, said Hoag giving his contract with Joseph Mann, from which the payment is expected to be raised, and to be credited to Hoag when paid by said Mann, and the balance of said $1903.33 in three years from this date, the interest on said money to be paid annually, and if said interest is not paid when .due, then the principal also becomes due and payable at once; said Hoag to give said Starr a deed of trust, with redeeming clause of one year's time, on his farm of two hundred and forty acres in Sec. 3, Tp. 13, R. 1 W., 4 P. M., in Mercer county, as security, said Starr to release the other eighty acres from his previous mortgage on receipt of the $575.00. Spencer Tompkins' notes to said Starr of May 5th, 1866, for $1200, were the origin of this matter, secured by mortgage of said Hoag on part of said land above described, which said notes are to be given up to Hoag on the execution of this contract."

Hoag subsequently executed and delivered to the attorneys of Starr the deed of trust, and three notes, each for four hundred and forty-two dollars and seventy-seven cents, each payable as agreed, and also delivered to them the Mann contract, which were all duly received by these attorneys, they then the accredited agents of Starr, who executed and delivered to Hoag a receipt in due form therefor.

On the 13th of May, 1871, Starr sued out an execution on the foreclosure decree, which was levied on these lands, and on the seventh of June following, they were offered for sale by the sheriff, and struck off to Starr as the highest and best bidder, for the sum of fifteen hundred and sixty-five dollars. These lands are claimed by Hoag to be worth six thousand dollars, and his homestead.

It appears that one Chesney had, before the execution of
the trust deed, purchased at an execution sale on a judgment
against Hoag, one of these tracts of land, and had assigned
the certificate to one Parkinson, and he assigned it to Hoag,
from which sale Starr had redeemed, using for that purpose
his decree of foreclosure, and a small judgment of five or
six dollars against Hoag in favor of his attorneys, Bassett
and Connell. It also appears that Starr had collected about
four-fifths of the money on the "Mann contract."

The prayer of the bill was, that the redemption from Ches-
ney be set aside, and the deed, if any, made by the sheriff to
Starr be cancelled, and that Starr be compelled to carry out
his agreement, and if he refuses, that he be required to sur-
render the trust deed and the notes and the "Mann con-
tract," and the money collected on it, and that the decree of
foreclosure, or so much thereof as found that Hoag was
indebted to Starr to the full amount of Tompkins' notes, and
so much thereof as awards execution against the general
property of Hoag, be annulled and revoked, and for general
relief.

The answer denies none of the material allegations in the
bill, except the statement that Starr's attorneys had informed
Hoag that Tompkins had paid the notes. The point made
by appellant on this, is, that Tompkins had agreed to secure
Hoag on a homestead lot in Galesburg, but when informed
Tompkins had paid the notes, he took no further thought
of the matter, and so lost the security, as Tompkins became
insolvent soon after.

There are various matters set forth in the answer, which it
is not necessary to state in detail, the court being of opinion
the controversy turns upon the agreement above set out, of
March 4, 1871, and the effect to be given to it.

It would appear from the allegations in the bill, that Hoag
had no knowledge that a personal decree was taken against
him in the foreclosure suit, until a short time before the
agreement of March 4, 1871, and when the creditor's bill, so

called, was filed by Starr. Hoag professes not to know the extent of his liability under that decree. Had he consulted counsel he would have been advised. But this is not material. The main scope of the bill is, to compel Starr to stand by the agreement of March 4, 1871.

The first question is, what did the parties intend when they entered into this agreement? It is to be remembered, that Hoag was, at no time, the debtor of Starr on his own account. He had executed no notes and received no value from Starr. The execution of the mortgage was simply an accommodation to a friend and brother-in-law, but he had not covenanted to pay the debt. What could have induced the parties to enter into this agreement? On the part of Hoag, an inducement may be found in the fact that he obtained an extension of time; and on the part of Starr, that he secured by it the ultimate payment of a larger sum of money than appeared to be due by the decree. That was for fifteen hundred and thirty-eight dollars and thirty-one cents, and rendered at the February term, 1870. And here it is well to say, Starr insists there was a mistake made by the master in estimating the amount due, he claiming that the amount actually due was one hundred dollars more. If this be so, by the agreement made in about one year thereafter, Hoag acknowledged an indebtedness of nineteen hundred and three dollars and thirty-three cents, when, with interest calculated at ten per cent, there would be only about eighteen hundred and two or three dollars due, and, if calculated at six per cent, only seventeen hundred and thirty-seven dollars due, making in either case a difference of more than one hundred dollars in favor of Starr, as an inducement. What does the agreement, on its face, show? That all matters in controversy between them were settled by the agreement. Everything anterior thereto was to be swept away, and a new departure marked out, mutually satisfactory and beneficial to the parties, and affording ample security for the

24—69TH ILL.

indebtedness Hoag had assumed for the Tompkins' debt, is admitted to have been the origin of "the matter."

What were the matters in controversy, then, between these parties? In the first place, Hoag controverted the right of Starr to satisfy his decree out of his general property, and to prosecute his bill to subject that to the payment of the Tompkins' debt. In the next place, the amount really due was unsettled, as Starr contends. To put every thing on a new basis, it was necessary the old basis should be put aside, and it was put aside by this new settlement, new notes and deed of trust. Why should these be made, if it was not the intention of the parties they should operate as satisfaction of the foreclosure decree? What benefit could Hoag gain by it, if the decree, by which his general property could be seized and sold, was to remain operative and effectual? We are of opinion, this adjustment was intended to be in satisfaction of the decree, and that being satisfied, the execution issued upon it, by force of which these lands were sold to Starr, was inoperative, and the sale void. This is the only practical view we can take of this agreement. But Hoag must pay and satisfy Starr for all moneys Starr has expended to preserve the title to any portion of these lands described in the trust deed, and in removing incumbrances of what nature soever placed upon them by Hoag, or on any part of them. This must be done before the sale under the decree can be set aside. That decree and sale must remain and stand as security for the performance of this duty on the part of Hoag.

The court below will ascertain the several amounts, and give to appellant reasonable time in which to pay and satisfy them. When that is done the decree and sale under it will be set aside, and Starr left to his remedy under his deed of trust and on his notes.

We have no time to ascertain how much money Starr has paid for the above purposes, or whether he has taken assign-

ments of incumbrances he claims to have paid.    All this has been done by the circuit court.

The decree is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*